Good morning and welcome to the Ninth Circuit. Judge Christin and I are also very happy to welcome our colleague, Judge Harpo, from the Western District of Missouri, sitting with us by designation. We have a number of cases submitted on the briefs this morning. We'll hear argument in J.M.C.B. v. Wolf, and you may proceed. Judge McEwen, and may it please the Court, we're on appeal from a dismissal for mootness, reviewable de novo, because it arises after the District Court Judge's decision on a motion to dismiss without any hearing on the issue. The District Court Judge adopted the findings and recommendation of the Magistrate Judge, who stated that any amendment of plaintiff's complaint would be futile. Appellants should have been afforded the opportunity to amend their complaint to state a claim that the rescission of DAPA, like this Administration's attempted rescission of DACA, is arbitrary, capricious, or otherwise not in accordance with the law. The plaintiffs were not permitted. Counsel, forgive me for interrupting. Could you give me the record site for the Magistrate Judge's futility observation? Page 11 of the findings and recommendation, and I don't have the excerpt of record page handy right now, Your Honor. Okay. Thank you. Would you address the obvious question that we're wrestling with, and that is, on the complaint as stated, what relief do you seek that could still be granted in light of the rescission? In light of the rescission, I think the relief could be granted in exactly the same manner that the Ninth Circuit allowed DACA recipients to challenge the rescission of DACA and continue renewing their DACA work cards or employment authorization documents while that litigation is pending. But that's not what you asked for. So that's the collision I'm having between the complaint, which is asking for specific relief for your client, which I understand obviously is your ultimate goal, and now you're wanting something about the whole entire program. So is there anything in your complaint that would give you the relief that you want? I believe there is not, Judge McEwen, but appellants did ask for leave to amend the complaint and were not permitted to do so and were dismissed before they were allowed to do so. Okay. Counsel, even if you had amended the complaint, the DAPA program was quite different than the DACA program. The DACA program was launched, right? And there are people who had that status and argued that they were relying upon it. And the DAPA program was entirely dissimilarly situated, wasn't it? Judge Kristen, I think the DAPA program is very similarly situated. I think that the Department of Justice argued at the Fifth Circuit that the injunction by the Texas court was overbroad and should have been limited to just the state of Texas or just the Fifth Circuit. And therefore, the right to apply for the work card existed for any DAPA-eligible persons out in the other 47 states other than the Fifth Circuit. And because of that eligibility to apply for the work card, they should be able to pursue a suit for the rescission of DAPA and amend their complaint so that they can do so. So they would be able to... In effect, you want them to be able to apply for a program that no longer exists, is that right? I would like them to be put in the same shoes as the DACA recipients. But that's the problem. Forgive me for interrupting, but right there, that's the problem. The DACA recipients were recipients. The program was up and running, right? And to go back to Judge McEwen's point, the DAPA program was announced and I think never implemented. Correct. Correct. So how do you get to a place where they're in the same shoes? Because the injunction was overbroad, these DAPA-eligible persons should have been allowed to apply. The only reason that the DACA recipients are allowed to renew DACA and that otherwise DACA-eligible persons are not allowed to apply for initial DACAs after the rescission is because they had their opportunity to apply, whereas the DAPA-eligible persons never had their opportunity to apply. So just picking up on your point that you made a minute ago, which is that the, I think what you're really saying is that the injunction that was entered in Texas should have been limited to Texas. Correct. Okay. And if we could rewrite history and that injunction had been limited to Texas, your clients then would have been in a position to apply. Exactly, yes. And Judge McEwen's point is this program doesn't exist anymore. Correct. But under that line of... What would they be applying to? We have to look where they would be if they went back to where they were. What would be available to apply to? I think they can... The court can order immigration to accept the applications under the old DAPA program, as it should have existed, and issue three-year work cards under the DAPA program, much like this government would say that the DACA program is gone. And what are these DACA recipients applying for in their renewals? Well, they're applying for the program that existed and that is being bought for. But they have an argument... Forgive me for interrupting, but they have an argument, if we're talking about regions, the folks in the DACA program have an argument about whether the new announcement terminating the program was arbitrary and capricious, right? Correct. And your position is... My position is that the DAPA rescission is in the same vein. Also an argument that it was arbitrary and capricious to rescind the DAPA program. The program existed, it wasn't permitted to initiate because of the injunction, but my clients applied for it while it existed, and they were denied, based on, in my opinion, the reliance on the injunction, they were denied their DAPA applications, which led to the lawsuit that brings us here today. Did all of your... Are all of your clients similarly situated, that they applied and they were rejected? They are, yes. I think there may have been two that got receipt notices, saying immigration has received and is processing their case. I think someone, maybe in the mailroom, didn't understand what it was and just has it pending still. Thank you. If you would need to, if you were to amend your complaint and you were successful, then you would be asking a court to order that this DAPA program continue? Correct. Do you have any authority for a court doing that where the program has actually been rescinded by the government? I do not, Your Honor, but I am, again, basing... New territory. Yes, new territory. I set a new precedent, but I am basing this on the Department of Justice's own arguments that the Fifth Circuit or the Texas District Court's injunction was overbroad and should have been limited to only Texas, who showed that they could potentially suffer injury. Texas would suffer injury through licensing fees, and that is also self-inflicted injury because Texas doesn't have to charge licensing fees. The state of Oregon wrote in and stated they would not suffer these same injuries. So my clients, the appellants, their rights were not represented in the proceedings in Texas and in the Fifth Circuit, and because their rights were not represented there, they have the right to sue here in this district, in this circuit. Again, appellees cite to Thomason to support the idea that appellants cannot amend their complaints through briefing or oral advocacy, yet in Thomason, the court below granted a motion for judgment on the pleadings with leave for plaintiffs to amend his complaint, whereas here, the findings and recommendations stated the appellant's case should be dismissed with prejudice for lack of subject matter jurisdiction, and appellants had no opportunity to amend their complaint. This court should remand to the district court to allow appellants leave to amend their complaint. So let me just make sure I understand your argument then. In order for us to do that in light of the fact of these pending mootness issues, we need to know that there is not futility in amendment. So would you mind just repeating again, what would be the new claim or the amendment you would make? The amendment would be that instead of seeking what the complaint asks for, we would ask that the district court below find that the rescission of the DAPA program, which existed, was arbitrary and capricious, and therefore allow our clients to apply for initial DAPA and obtain work cards and social security numbers and licenses in Oregon. And this injury is ongoing because it started with the rescission of DAPA. This new injury started with the rescission of DAPA, and it has not terminated by the government's action. In fact, it is ongoing for the rest of their natural lives because they would have held social security numbers. Even if the government rescinded DAPA properly in a non-arbitrary, non-capricious manner in the future, those social security numbers they could get with the work cards would be valid for the rest of their natural lives. And so this injury is ongoing for the rest of their natural lives. There were also some arguments about the uniform application of immigration laws. I'd like to point out that here in the Ninth Circuit, as well as the Sixth Circuit, temporary protected status is recognized as a lawful admission, and this has huge consequences in immigration law because a person with lawful admission and a child, U.S. citizen child over 21, can apply for their green cards here in the United States. through a process called adjustment of status. Whereas had they not had that lawful admission, they'd have to go to their home country through constant processing to get their green card. And if they did that, there's another law, Immigration and Nationality Act, Section 212 A9B, states that if they've been here illegally for over a year and then they leave, they can't come back for 10 years. So the Ninth Circuit already recognizes TPS as admission and applies immigration law differently here. Another example is administrative closure. The Board of Immigration Appeals and former Attorney General Jeff Sessions limited the immigration judges' ability nationwide to administratively close and manage their dockets, administratively closing removal cases. The Fourth Circuit recently overturned Bermuda's CODA and allows administrative closure again in the Fourth Circuit. So we do not have, there are exceptions to the uniform application of immigration law. And I would like to reserve the rest of my time. You may. Thank you. Good morning, and may it please the Court, Thomas Pullum for the government here. In 2015, a district court in Texas preliminarily enjoined the Department of Homeland Security from implementing any and all aspects of the DAPA policy. That injunction was affirmed by the Fifth Circuit and by an equally divided Supreme Court in 2016. After the Supreme Court's decision, the plaintiffs here applied for DAPA. When their applications were rejected, they filed suit. As the Court noted, the sole basis of their claim was that the Department violated the APA by denying their applications on the basis of the Texas injunction. But the Secretary of Homeland Security has rescinded the DAPA policy, and some time later, the parties to the Texas lawsuit stipulated for dismissal and the PI was dissolved. The district court correctly held that this case was moot and their complaint should be dismissed for lack of jurisdiction. The government asked that the Court affirm that ruling. I'd like to respond to a couple of specific points that the plaintiffs made, if I could. They referred below to a motion, the denial of a motion to amend the complaint. My understanding, based on what the magistrate judge and the district judge said, was that that request had, the request to amend was to join additional plaintiffs. We can see in the magistrate's ruling, that's on page 31 of the excerpts of record, he says, he doesn't say broadly, any amendment of the complaint, including joining of the additional plaintiffs would be futile. In the district court, the district court said that the motion to dismiss was granted and plaintiffs' motion to join additional parties is denied. So it seemed that the focus, what the courts were looking at there, was whether it would be futile to add additional parties to the complaint. Counsel, could you give me the excerpt page again? Because you know how we always get things numbered two or three different ways. I'm just having trouble finding where you are. No, of course. So, the district court's ruling, I believe, is on ER 10. Yep, I have that. And then the magistrate judge's report and recommendation is ER 31. And I apologize, I don't have the... That's okay. So ER 31 is page 11 of the findings of recommendation. I think that we're talking about the same thing. It's the page of the findings of recommendation that has the conclusion? That's correct. It says page 11 findings. So we're on the same page. Yes, I apologize. And the docket sheet for the district court proceedings indicates that docket entry eight is a motion for joinder. So now what the counsel is saying is that their amendment would be that rescission of DAPA was arbitrary and capricious. What is the government's response to that? Well, I mean, this is something that hasn't been briefed at all or decided by a lower court. That's the parallel to Regents, isn't it? It would be a similar lawsuit, but I think the analysis would be different. As this court pointed out in Regents, for example, one of the reasons why it said that the rescission was reviewable was because it was based on a legal conclusion that the DACA program was unlawful. The court specifically contrasted Secretary Duke's rescission in that case, or acting Secretary Duke's rescission, I apologize, with Secretary Kelly's rescission of DAPA, which was not based on a legal conclusion. The Secretary Kelly said he took consideration of a number of factors, including the preliminary injunction in this matter, which had been, again, affirmed by the Supreme Court. The fact that DAPA never took place, new immigration enforcement priorities that were outlined in an executive order by President Trump. And he said he carried out the rescission in exercise of my discretion in establishing national immigration enforcement policies and priorities. This court in Regents contrasted Secretary Duke's, again, this is not the government's position, I'm just pointing out what the court said, said that acting Secretary Duke had used different language, she said, based on my, I believe, authority. And the court took that, said that was a very significant difference, that she wasn't actually acting on her discretion, she was based on a legal conclusion. So these programs would face very different, would present very different considerations. And I think one indication of that, as this court noted, the DACA policy had been implemented and many people had received deferred action under that policy. When my recollection, and I apologize, I don't have this at my fingertips, but my recollection is the injunctions in the California and New York litigation required the government to continue processing applications for renewal under DACA, but did not require the government to accept new applicants. So that's another way- I guess the question would be, obviously you're arguing what might be the merits of a claim of an arbitrary and capricious- That we have not seen yet. That you haven't seen, but in the abstract. Right. And then trying to compare it to Regents. But I think the one issue, the only issue then, we have to consider because counsel has candidly acknowledged that as far as relief under the program, there is no program right now. So the question is, was the district court correct in saying that in accord with amendment would be futile? Well, it's not clear to me that what the district judge had in mind, the district court had in mind was an amendment of the substantive complaint as opposed to amendment just to join parties. So in other words, just to make sure I'm not missing your point there, I think your point is they didn't ask to amend the substantive portions of their complaint, just joined her. So I apologize. I don't have their motion in front of me because I don't think this was the actual motion that they filed. I don't believe this was raised in their brief, but I'm just based on what the district court seemed to have in mind and the docket sheet. It seemed that the district court was addressing whether the addition of additional parties would make a difference. Okay. So let's say that's right. Okay. That that's correct. Then could you circle back to Judge McEwen's question, which is even if there hadn't been a request to amend, substantively, was it futile for them, would it have been futile for them to amend their complaint to bring a, to bring claims under the APA, arguing that the rescission was arbitrary and capricious? Well I think nothing would have stopped them from filing a new complaint at any time regardless of... Amend. But if they, if they went there, let's just say they could have filed a new complaint, but why couldn't they have amended that complaint to bring that claim? Why would that claim be futile is what we're trying to ask. Well I would say a couple of things. One in terms of getting, I mean what... In other words, I think you have a very persuasive argument that the argument they're trying to make today wasn't in the complaint. Right. And I'm going to give you, because I haven't checked, but I'm certainly willing to assume for purposes of this hypothetical that any request to amend was a request to add parties only. Right. So my question is, had they said, we want to amend substantively to make this claim that the rescission of the program was arbitrary and capricious within the meaning of the APA, would that have been futile? I'm not sure that it would have been futile. Well, I should say, I think the government's position is yes, it would be futile based on similar arguments we made to the Supreme Court in the DACA litigation, which is that this rescission, such a rescission would not be reviewable under the APA because these matters are committed to agency discretion. I think if the court is inclined to go that way and not dismiss this complaint for mootness, which would be our primary position, that in that case it may make sense to hold a decision pending the Supreme Court's resolution of the DACA litigation. I wasn't trying to telegraph a punch. I'm just trying to figure out whether or not your position is it's futile, whether there's a distinction between, because one difference does seem to me to be striking, and that is that DAPA wasn't ever launched. No, that's right. There was no program. And I'm just trying to tease out, does that make any APA challenge necessarily futile? I'm not sure it does because the program was announced and then rescinded, but it does seem to me to be pretty tough sale to say that the folks are similarly situated. I think that's right. I think ultimately our position would be that it's futile. I just apologize. I don't have more at my fingertips now. But I will point out in terms of the injunction that they would be asking for, I certainly believe that that would be futile because they would be asking a district court to basically issue a conflicting injunction with essentially with what the Texas injunction was. Now, technically that injunction has been dissolved because the suit was dropped, but there's binding precedent in the Fifth Circuit that the DAPA policy was unlawful. And the plaintiffs would be asking, basically be asking for conflicting rulings. And in that case, I don't think it would be appropriate for a court here to order the Is the binding precedent established that the program was unlawful from its inception? Is that your point? Well, yes. I mean, that was what the Fifth Circuit held. I mean, and the district court there issued a nationwide injunction that was affirmed by an equally divided Supreme Court. So I mean, yes, that was the effect of the Fifth Circuit's ruling that it was unlawful from its inception and the government was complying with that injunction. I mean, what the brief talks about is we seem to have, you know, changing positions here, but the brief talks about going back to the district court and saying the district court could have enjoined the rescission, thereby Mr. Gonzalez's client's application and the issuance of, for example, a Social Security number would have proceeded. I don't know then what would happen because the government has rescinded the program. But that's, I think, what they argued in the brief, although today they're saying, well, that they should be saying that the rescission was arbitrary and capricious. In the brief, they're saying that the court could have enjoined the rescission. That's right, and I think, I mean, that's an injunction that I think just would not have issued based on, at a minimum, principles of comedy because it would subject the government to directly conflicting injunctions, you know, at the time. Let me ask you a little different question. If what they asked in the district court related to adding new parties, and that's what the district court looked at, and if what they're asking now is different, so now we have a different idea of how it could be amended, what's the government's view as to whether raising a potential amendment on appeal is sufficient to overcome a futility finding by a district court? I don't have any case law at hand, but I believe the court could look to the arguments the government raised in the DACA litigation in the Supreme Court, those same arguments, many of them, and in fact, more additional arguments would apply here, and that would make any such amendment futile, including that this rescission would not be judicially reviewable at all. Is it the government's position that the JMCB and others could actually go out today and file an independent case challenging the rescission of the program as opposed to their particular claim? Yes, they could file that complaint. They certainly could file that complaint. I don't think that complaint would succeed for... Well, that's a different question. But yes, they could file a new suit, but I think all of this just underscores that this is not how the case was litigated and briefed up to this point. This is actually a very different request, and it's quite common, I think, when a district court dismisses a case's moot and the parties pop up and say, well, wait, we could have done this. A court says, well, that's not what you asked for. In fact, this court in McAuliffe v. Graeber that came up, the petitioner there said, well, I could get some other relief, not the relief I asked for. And the court said, well, you did not amend your petition. Here they did not amend their complaint. They haven't filed a new complaint. They didn't ask for the relief they're asking for now. And so I think the most appropriate solution here is to affirm the judgment that this case should be dismissed as moot. Thank you. Thank you very much. Let me ask you, apart from the filing fee, would there be any downside to just going out and filing a new case with the new claims that you've explained to us? I don't see any downside other than we've already got this case pending, and again, the district judge relied on the findings and recommendation of the magistrate that said any amendment, I agree, that all appellants asked for was to add parties below. But the magistrate judge said any amendment would be futile. And I think you've shown here . . . The magistrate judge doesn't have to sit there and think up all the possible claims somebody could have brought when they . . . don't you have to put forward, here's what I would amend, and the magistrate says, well, that amendment, and not put forth anything else. Otherwise, you make the magistrate judge turn into a litigator, wouldn't you? And say, well, I can imagine 25 claims that they haven't brought here. I don't know that we've ever imposed that kind of duty on a court, a district court. Well, Judge McKeon, again, there was a motion to amend pending that was never resolved until the motion to dismiss. There was no hearing on this issue. All right. Did the motion to amend include a copy of a proposed amendment? It did not. I'm trying to imagine at that juncture, it seems to motion to amend may have been pretty easily confused with one request, right, which would have been to force the government, I guess I can use that verb, to process the application, as opposed to what you're talking about today, I think for the first time, which is an amendment that would call upon the government to not rescind the program entirely. Is that right? That's correct. And again, I'm bringing forth this point based on the briefings of the government in response to those briefings. So that last argument, we do, you know, we all know the law about liberal amendments to complaints, but that's supposed to happen in the district court. Is there, is there anywhere, it's not a trick question, is there anywhere in the record in the district court where your pleadings or your motions ask the district court to amend for this reason? No, there is not. Okay. I appreciate your candor. So one other comment I'd like to make is the, it is non-binding precedent. The Fifth Circuit injunction was affirmed by an equally divided Supreme Court, which has no precedential value. That decision in the Fifth Circuit is non-binding also. That injunction has been dissolved. Well, that's not how it works. The Supreme Court, the lower court decision is then affirmed, basically, and that's the binding decision, right? That, that's correct, but, but again, these parties' rights were not represented in that litigation. Fair enough. So deferred action and DAPA is, is a practical consideration. If there are 11 to 15 million people in the United States illegally, DAPA would have covered four million of those people. The government deports between 100 to 400,000 people a year. It's going to take 27 and a half to 150 years to deport everyone, and these are the last third of the people that they would deport. It's going to get, take 18 to 100 years to get to these people. We rest our case on that. So you're saying that they, obviously, they would be advantaged if they had a social security number and that kind of regularity. And be able to care for and provide for their U.S. citizen and lawful permanent resident children, and they have no crimes, they, they are not high priority. All of the new removal cases we get in our office come from the criminal courts. They come from the jail system. So these people would not come into our office saying, I'm being deported now for the next 18 to 100 years. So it, it makes practical sense to give them work cards, social security numbers at this point. Thank you. Thank you. Thank both counsel for your briefing and your argument, and thank you for coming to Seattle today. The court is adjourned.
judges: McKeown, Christen, Harpool